USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1912 UNITED STATES OF AMERICA, Appellant, v. KENNETH SCHIAVO, Defendant-Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Edward F. Harrington, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Selya, Circuit Judge. _____________ _____________________ George W. Vien, Assistant United States Attorney, with whom ______________ A. John Pappalardo, United States Attorney, and Geoffrey E. ___________________ ___________ Hobart, Assistant United States Attorney, were on brief for ______ appellant. Paul F. Markham for appellee. _______________ ____________________ July 13, 1994 ____________________ TORRUELLA, Circuit Judge. In this interlocutory ______________ appeal, the government challenges the district court's order suppressing evidence seized during the course of a motor vehicle stop. We affirm. BACKGROUND BACKGROUND __________ Kenneth Schiavo, Howard Winter, and Gennaro Farina were the subject of a drug investigation by federal agents and the Massachusetts State Police. As part of the investigation, the government provided a confidential informant ("CI") with $9,000 in government funds in a White New Balance bag to be used for the purchase of drugs.1 On November 4, 1991, the CI met Winter at the Centurian Pub in Sutton, Massachusetts, and gave him the $9,000 as partial payment for a kilogram of cocaine that Winter had delivered on November 1, 1991. After Winter took the cash, agents followed him with the intention of recovering the money. Agents also followed Schiavo, whom they believed to be Winter's source of cocaine. After Winter left the Centurian Pub, he went to his home in the Worcester area, then to Pudgie's Lounge ("Pudgie's") in Worcester. He then left Pudgie's, went home, and returned. After exiting Pudgie's the second time, he went to the Chandlery Pub in Chelsea. Prior to Winter's arrival at the Chandlery Pub, agents had followed Schiavo to this location. When Winter arrived, Schiavo's vehicle was parked outside. Winter remained ____________________ 1 Prior to providing the CI with this money, agents photocopied each bill in order to memorialize the serial numbers of the currency to be transferred to Winter. -2- in the pub for approximately twenty minutes and then departed in his vehicle. Approximately five minutes after Winter left, Schiavo came out of the restaurant, got into his vehicle, and exited the parking lot. Trooper Thomas P. Duffy of the Massachusetts State Police and several other investigating agents had developed a strategy to recover the $9,000. Agents expected Winter to meet with Schiavo to give him the money that he had just received from the CI. In the event that Schiavo met with Winter, agents would stop Schiavo's car. In accordance with this plan, Trooper Duffy followed Schiavo in an unmarked cruiser when Schiavo left the Chandlery Pub. As Schiavo drove onto Broadway Street in Somerville, Massachusetts, Trooper Duffy, who was dressed in uniform, signalled to Schiavo to pull over. Schiavo pulled into the parking lot of a nearby supermarket, parked, and got out of his vehicle. Trooper Duffy asked Schiavo to produce his license and registration.2 When Schiavo stood up after retrieving the registration from the glove compartment, Trooper Duffy noticed a large bulge protruding from the left side of Schiavo's jacket. Trooper Duffy immediately asked Schiavo if he had a weapon. Schiavo responded that he did not. Pointing to the bulge in Schiavo's jacket, Trooper Duffy asked Schiavo, "Is this all you here?," to which Schiavo responded, "Mostly." Trooper Duffy ____________________ 2 Trooper Duffy was wearing a transmitting device during his encounter with Schiavo. -3- again asked Schiavo about the nature of the bulge and Schiavo informed him that it was a bag. At that point, Trooper Duffy conducted a pat frisk of Schiavo. After Trooper Duffy completed the pat frisk, Schiavo began to unzip his jacket in an apparent effort to show Trooper Duffy that he was not carrying a weapon. Without being asked, Schiavo stuck his hand inside his coat. Concerned that Schiavo was indeed armed, Trooper Duffy immediately instructed Schiavo to raise his hands. Trooper Duffy noticed a brown bag inside Schiavo's jacket and asked what it contained. Schiavo stated, "Just open my coat and take it." Schiavo then told Trooper Duffy that the bag contained approximately $11,000. When Trooper Duffy inspected the contents of the paper bag, he found that it contained the white New Balance plastic bag that the CI had given to Winter earlier. The bag contained $8,500. After discovering this money, Trooper Duffy seized money from Schiavo's shirt pocket and the two front pockets of his pants. In total, Trooper Duffy seized $12,500 from Schiavo, including the $9,000 given to Winter by the CI. After his indictment, Schiavo filed a motion to suppress the currency as evidence. The district court found that because the incriminating nature of the bulge in Schiavo's pocket was not immediately apparent to Trooper Duffy upon his initial pat frisk, the "plain feel" doctrine espoused in Minnesota v. _________ Dickerson, 113 S. Ct. 2130 (1993), did not justify seizure of the _________ money during the Terry protective patdown search. The court _____ -4- further found that Trooper Duffy at no time had probable cause to believe that Schiavo possessed the serialized money and therefore Trooper Duffy did not have a justification to seize the money based on exigent circumstances. STANDARD OF REVIEW STANDARD OF REVIEW __________________ We review the district court's findings of fact, following the suppression hearing, including mixed findings of fact and law, for clear error. United States v. Rodr guez- _____________ __________ Morales, 929 F.2d 780, 783 (1st Cir. 1991). We afford no _______ deference, however, to findings of the district court under the wrong legal standard. Id. __ PLAIN FEEL DOCTRINE PLAIN FEEL DOCTRINE ___________________ "[S]earches and seizures conducted outside the judicial process, without prior approval by judge or magistrate are per se ___ __ unreasonable under the Fourth Amendment -- subject only to a few specifically established and well delineated exceptions." Minnesota v. Dickerson, 113 S. Ct. 2130, 2135 (1993) (internal _________ _________ citations and quotations omitted). One exception, recognized in Terry v. Ohio, 392 U.S. 1 (1968), is that "where a police officer _____ ____ observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot the officer may briefly stop the suspicious person and make reasonable inquiries aimed at confirming or dispelling his suspicions." Id. (internal citations and quotations omitted). __ Under Terry, an officer may also conduct a patdown search where _____ the officer is justified in believing that the person is armed -5- and dangerous to the officer or others. Terry, 392 U.S. at 24. _____ This protective search must be "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." Id. at 26; Dickerson at __ _________ 2136. During a lawful Terry-type search, police officers may _____ seize an object in "plain view" without a warrant if they have probable cause to believe it is contraband without conducting some further search of the object, i.e., if its incriminating character is "immediately apparent." Dickerson at 2136-37. _________ Likewise, the "plain feel" doctrine permits an officer to seize an object, if its incriminating character is immediately apparent during a lawful protective pat-search. Id. at 2137-38. __ In the present case, there is no doubt that the police were justified under Terry in stopping Schiavo and frisking him _____ for weapons. The issue we must therefore address is "whether the officer who conducted the search was acting within the lawful bounds marked by Terry at the time he gained probable cause to _____ believe" that the bulge in Schiavo's jacket was contraband.3 Id. at 4548. The district court found that he did not. We quote __ from the district court's Memorandum and Order: At the suppression hearing, Trooper Duffy repeatedly asserted that he did not know what the bulge contained even after he had conducted the pat frisk. In fact, he indicated that only after he had taken the bag of money from Schiavo's jacket ____________________ 3 The government does not assert that the serialized money was in "plain view" at the time of the search. -6- and examined its contents was he able to determine what the bulge was. Because Trooper Duffy did not know what the bulge was after the initial pat frisk and because he needed to conduct a further, unwarranted search of the bulge and its contents to determine what it was, the "plain feel" doctrine espoused in Dickerson does not apply. _________ The district court properly applied the legal standard described in Dickerson. The district court's conclusion that the _________ incriminating nature of the bulge in Schiavo's pocket was not "immediately apparent" is not clearly erroneous. Trooper Duffy "overstepped the bounds of the strictly circumscribed search for weapons allowed under Terry." Id. at 4548. Trooper Duffy's _____ __ continued exploration of the brown paper bag in Schiavo's pocket "after having concluded that it contained no weapon was unrelated to the sole justification of the search under Terry: . . . the _____ protection of the police officer's and others nearby." Id. at __ 4548 (internal citations and quotations omitted). PROBABLE CAUSE AND EXIGENT CIRCUMSTANCES PROBABLE CAUSE AND EXIGENT CIRCUMSTANCES ________________________________________ The Supreme Court has held that in light of the exigency arising out of the likely disappearance of a vehicle, warrantless searches of a vehicle do not contravene the Warrant Clause of the Fourth Amendment when such searches are based upon probable cause to believe that the vehicle contains evidence of a crime. California v. Acevedo, 500 U.S. 565, 569 (1991); Carroll __________ _______ _______ v. United States, 267 U.S. 132, 158-159 (1925). In Acevedo, the _____________ _______ Supreme Court extended this exception to containers found within a movable vehicle. The Court held that where police had probable -7- cause to search a container, in that case, a brown paper bag located in the trunk of the car, the Fourth Amendment did not require "the police to obtain a warrant to open the sack in a movable vehicle simply because they lack probable cause to search the entire car." Acevedo, 500 U.S. at 573. _______ Although the government does not contend that the currency was seized pursuant to a vehicular search, the government does maintain that exigent circumstances justified seizure of the money without a warrant. The search of one's person is more intrusive on the rights protected by the Fourth Amendment than the search of an automobile. Cardwell v. Lewis, ________ _____ 417 U.S. 583, 590 (1974) (citing Almeida-S nchez v. United _______________ ______ States, 413 U.S. 266, 179 (1973) (Powell, J., concurring)). ______ Hence, circumstances which could justify a warrantless search of an automobile will not necessarily justify a warrantless search of a person. In the present case, we need not reach the issue of whether exigent circumstances justified the warrantless search of the paper bag located in Schiavo's jacket because we find that the district court did not err in holding that the police lacked probable cause to believe that Schiavo had the serialized money at the time of the search at issue in this case. "In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the Court has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution." Chambers v. ________ Maroney, 399 U.S. 42, 51 (1970); see also United States v. _______ _________ ______________ -8- Ramsey, 431 U.S. 606, 622 (1977) (vehicular searches inside the ______ country require probable cause). Absent probable cause, exigent circumstances would not bring the warrantless search of Schiavo within the bounds of the Fourth Amendment.4 The government challenges the district court's finding that at the time of the search, Trooper Duffy lacked probable cause to believe that Schiavo possessed the serialized money. In its initial Memorandum and Order5 the district court stated: I note in passing that Duffy did not have probable cause to believe that the money was in Schiavo's possession. More than two hours had passed between the CI's delivery of the money to Winter and Winter's arrival at the Chandlery. During this time, Winter stopped at several places, at any one of which he could have left the money. There was therefore not even probable cause to believe that Winter had the money in his possession when he entered the Chandlery. Further, no one ever saw Winter deliver ____________________ 4 The government argues that probable cause developed during Trooper Duffy's encounter with Schiavo. This contention is without merit. This argument overlooks the district court's factfinding. The district court found that, "only after Trooper Duffy had taken the bag of money from Schiavo's jacket and examined its contents was he able to determine what the bulge was." This is a fact-specific finding, well within the district court's ken. Given the "greatly circumscribed" scope of appellate review applicable to such findings, United States v. ______________ Rutkowski, 877 F.2d 139, 144 (1st Cir. 1989), we must accept it. _________ Thus, because Trooper Duffy was not acting within the lawful bounds marked by Terry at the time he realized that the bulge in _____ Schiavo's jacket was either contraband or evidence of a crime, the search that gave rise to this discovery does not satisfy the requirements of the Fourth Amendment. See Wong Sun v. United ___ _________ ______ States, 371 U.S. 471 (1963) ("fruit of the poisonous tree" ______ doctrine). 5 Following the Supreme Court's decision in Dickerson, the _________ district court reconsidered and reaffirmed its initial Order allowing Schiavo's motion to suppress the currency seized. -9- any money to Schiavo at the Chandlery. Duffy conceded that he had only a "hunch" that Schiavo had the serialized money when he left the Chandlery.[6] I consequently find that prior to stopping Schiavo, Duffy's hunch did not rise to probable cause to believe that Schiavo possessed the serialized currency. Although Duffy did not conduct a search of Schiavo's vehicle, I simply note that the evidence indicates that he would not, therefore, have had probable cause to support a warrantless search of Schiavo's vehicle. This finding by the district court is not clearly erroneous. We therefore affirm the district court's order suppressing the evidence seized during the stop of Schiavo's vehicle. Affirmed. ________ ____________________ 6 In a footnote the district court stated that "This hunch only extended to the money being generally inside the vehicle. Duffy admitted that he never anticipated that the money would be on Schiavo's person." -10-