**UNITED STATES, Appellee,**

v.

**Clifford A. PROCTOR, Defendant, Appellant.**

**No. 97–2420.**

United States Court of Appeals, First Circuit.

Heard April 6, 1998.

Decided July 13, 1998.

---

Daniel J. Perry, by appointment of the Court, with whom Karen D. Kemble and Silver & Perry were on brief for appellant.

Margaret D. McGaughey, Assistant United States Attorney, with whom Jay P. McCloskey, United States Attorney, and Timothy D. Wing, Assistant United States Attorney, were on brief for appellee.

Before TORRUELLA, Chief Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

TORRUELLA, Chief Judge.

Defendant Clifford A. Proctor, charged in a three-count superseding indictment, entered a conditional plea of guilty to one count of possession with intent to distribute a quantity of marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The government dismissed the remaining counts against him. Proctor appeals the district court's denial of his pretrial motion to suppress evidence seized during a pat-down search of his person by state police. We hold that the search and seizure at issue did not violate the Fourth Amendment. Accordingly, we affirm.

## I. BACKGROUND

The following facts are essentially undisputed.

In September 1993, the Tucson, Arizona and Camden, Maine police were working together in an investigation of an interstate marijuana growing, shipping and resale con-

spiracy. Evidence revealed that packages were being sent to RR # 1, Box 4528, Camden, Maine, the residence of Patricia and Todd Proctor. The Camden Police planned a controlled delivery of a package known to contain marijuana, and sought an anticipatory warrant to search the property in conjunction with the delivery. The warrant mentioned only Patricia and Todd Proctor, not their son, Clifford. The warrant also contained no information, speculation, or suspicion that the residence was frequented by anyone buying or selling drugs. The warrant issued for the premises and vehicles under the control of Patricia or Todd Proctor.

After Camden police delivered the package to the Proctor residence at 3:15 on September 9, 1993, three police officers began to execute the warrant. As they did, an individual fled into the woods behind the residence. Two officers pursued, while Officer Cameron Campbell stayed behind to "maintain the internal security and integrity of the residence."

Shortly thereafter, Campbell observed two young men arrive in a vehicle. They climbed the two hundred steps to the Proctors' front door. As they neared the top of the stairs, Campbell stepped out of the house, identified himself, and asked the two men to come up onto the porch. Those men were Clifford Proctor and his friend. As they entered the porch, from a distance of eight to ten feet, the officer noticed a bulge in Proctor's jacket pocket.

The men complied fully with Officer Campbell's instructions. Officer Campbell frisked Proctor first. He touched the bulge in Proctor's jacket pocket and felt a soft, leafy substance in a glassine bag which he believed to be marijuana. He said nothing and proceeded to pat down the other individual. Then Officer Campbell ordered them both to produce identification, which they did. The officer proceeded to ask Proctor to empty his pockets. Proctor emptied his pants pockets and gave Officer Campbell the contents. When Proctor indicated that he had nothing else in his pockets, the officer reached into Proctor's jacket pocket and removed a plastic bag containing marijuana. Proctor was then arrested and a warrant obtained to search his business, the Cranberry Tiger, where more evidence against him was discovered.

The government brought a three-count superseding indictment against Proctor, charging him with conspiring to distribute marijuana. After the indictment was returned, Proctor moved to suppress evidence, challenging, inter alia, the seizure of marijuana from his jacket during Officer Campbell's pat-down search of his person. The district court denied his motion to suppress, finding that the officer had a reasonable basis to perform the frisk given the totality of the circumstances and to remove the glassine bag containing marijuana. Proctor filed a notice of appeal from this denial. Subsequently, he pled guilty to one count of possession with intent to distribute a quantity of marijuana, but had the other counts against him dismissed. His guilty plea is conditional upon the outcome of this appeal.

## II.  DISCUSSION

We review a district court's findings of fact for clear error and its conclusions of law de novo. See United States v. Young, 105 F.3d 1, 5 (1st Cir.1997). "Determinations of probable cause and reasonable suspicion, relevant to the constitutionality of law enforcement seizures and arrests under the Fourth Amendment, present mixed questions of law and fact which we review de novo." Id.

### A.  The Pat–Down Search

The Fourth Amendment guarantees "[t]he right of the people to be secured in their persons, houses, papers, and effects, against unreasonable searches and seizures...." U.S. Const. amend. IV. " '[S]earches and seizures conducted outside the judicial process, without prior approval by judge or magistrate are per se unreasonable under the Fourth Amendment—subject only to a few specially established and well delineated exceptions.' " See United States v. Schiavo, 29 F.3d 6, 8 (1st Cir.1994) (quoting Minnesota v. Dickerson, 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993)). One such exception was recognized in Terry

*v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), in which the Supreme Court held:

[W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, ... and where nothing in the initial stages of the encounter serve to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

*Id.* at 30, 88 S.Ct. 1868.

Proctor contends that Officer Campbell lacked a reasonable suspicion to conduct a *Terry* frisk. Relying substantially on *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), appellant avers that the officer had "no reason to believe [Proctor] had committed, was committing, or was about to commit any offense under state or federal law." *Id.* at 91, 100 S.Ct. 338. In *Ybarra,* the Supreme Court held that although a search warrant issued upon probable cause gave police the authority to search the premises of a small public tavern and to search the bartender for narcotics, a pat-down search of a tavern patron, Ventura Ybarra, was not constitutionally permissible where there was no reasonable belief that he was involved in any criminal activity or that he was armed or dangerous.

■ As the *Ybarra* court noted, "[w]here the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person." *Id.* at 91, 100 S.Ct. 338. Likewise, the *Terry* frisk of appellant must be supported by a reasonable suspicion particularized with respect to Proctor. We find that the facts surrounding Proctor's encounter with the officer gave rise to a reasonable belief that a pat-down search was warranted. Officer Campbell was alone in a remote location, accessible only by climbing two hundred steps, with a package containing five pounds of marijuana nearby. His two fellow officers had just left the house in pursuit of an individual who had fled into the woods. Proctor and his companion arrived at the residence, where a search warrant was being executed, within fifteen minutes of the controlled delivery of marijuana. Unlike the defendant in *Ybarra* who was a customer in a public tavern, Proctor entered the grounds of a private residence. It is reasonable to infer that Proctor and his friend were prospective buyers or otherwise connected with the distribution of the marijuana.

■ In the face of two individuals who were conceivably involved in illegal drug trafficking, Officer Campbell, as the only officer on the scene, had a legitimate concern for his personal safety. In particular, the bulge that the officer observed in Proctor's jacket, when viewed in light of the other details surrounding the encounter, permitted a reasonable inference that appellant was armed and dangerous. Proctor argues that the officer's testimony suggests that he would have searched the two individuals even in the absence of a noticeable bulge. However, we need not concern ourselves with what would have happened under different circumstances, but only with what actually happened. Moreover, in assessing a Fourth Amendment challenge, we consider the objective reasonableness of an individual officer's conduct rather than that officer's actual subjective motivations. *See Whren v. United States,* 517 U.S. 806, 814, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) ("[T]he fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective intent."). We rule that, under the totality of the circumstances, the officer's pat-down search of Proctor did not violate the Fourth Amendment.

## B. The Seizure of the Marijuana

■ Proctor argues that, even if the police had a reasonable suspicion to conduct a search, the district court erred in ruling that the officer, upon patting down the defendant, made an immediate determination that the bulge was in fact a glassine bag containing marijuana, and that it was reasonable for the officer to remove the item from Proctor's jacket. Under the "plain-view" doctrine,

during a lawful search, police may ·seize an object in plain view without a warrant if "its incriminating character is immediately apparent...." *Minnesota v. Dickerson,* 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). Similarly, the "plain-feel" doctrine permits an officer who "lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent" to seize the contraband. *Id.* We review a finding that the incriminating nature of an object was immediately apparent from a plain feel for clear error. *See United States v. Schiavo,* 29 F.3d 6, 9 (1st Cir.1994).

We hold that the seizure of the glassine bag of marijuana from Proctor's jacket falls within the scope of the plain-feel doctrine. In *Schiavo,* this court upheld the district court's suppression of evidence seized during a pat-down search because the state trooper conducting the search indicated that only after he had taken a paper bag from the defendant's jacket and examined its contents was he able to determine that the bulge was contraband. *See* 29 F.3d at 9. In this case, the district court found that Officer Campbell, upon feeling the bulge, immediately recognized it as a bag containing marijuana. The *Dickerson* court noted:

> *Terry* itself demonstrates that the sense of touch is capable of revealing the nature of an object with sufficient reliability to support a seizure. The very premise of *Terry,* after all, is that officers will be able to detect the presence of weapons through the sense of touch and *Terry* upheld precisely such a seizure.

508 U.S. at 376, 113 S.Ct. 2130. Officer Campbell testified that he was consistently able to determine the feel of marijuana from conducting numerous pat-downs of suspects. It is important to note that the officer was conducting the frisk at a residence where he had just delivered five pounds of marijuana. Under these circumstances, we find no clear error.

While the defendant argues that the evidence should be excluded under *Dickerson,* Officer Campbell did not engage in a "continued exploration of respondent's pocket after having concluded that it contained no weap-on," *id.* at 378, 113 S.Ct. 2130, as the officer in *Dickerson* did. Instead, he *immediately* determined the contents of the bulge after a more cursory feel. Proctor also alleges that clear error resulted from the district court's oral ruling that the officer had a reasonable basis to perform the pat-down "given the circumstances surrounding the pat-down for weapons *and/or contraband.*" Appellant asserts that the district court found Officer Campbell's continued exploration of the bulge with his fingers permissible because of its mistake with respect to the scope of *Terry,* which allows only a frisk for weapons. We reject this argument outright. It is clear from the transcript of the hearing on Proctor's suppression motion as well as the district court's written order·that the basis of its decision not to suppress the drug evidence was the plain-feel doctrine in *Dickerson* rather than the scope of *Terry.* In other words, the district court relied on the fact that the identity of the bulge was immediately apparent to Officer Campbell rather than on its belief that *Terry·* allows a pat-down for contraband. Accordingly, the district court properly denied Proctor's motion to suppress.

Having determined that the search and seizure at issue was constitutionally permissible, we need not reach appellant's argument that any evidence obtained from the subsequent search of Proctor's business premises should be suppressed as "fruit of the poisonous tree."

## III.  CONCLUSION

For the foregoing reasons, we *affirm* the district court's order denying defendant's suppression motion.