UNITED STATES of America

v.

Oliver STEELE, Defendant

No. CR. 02–3–P–C.

United States District Court,
D. Maine.

April 9, 2002.

Jonathan R. Chapman, Office of the U.S. Attorney, Portland, ME, for U.S.

Thomas L. Goodwin, Strike, Goodwin & O'Brien, Portland, ME, for Oliver Steele.

## MEMORANDUM OF DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

GENE CARTER, District Judge.

The Court now has before it Defendant's Motion to Suppress Evidence (Docket No. 6). Defendant argues that the evidence discovered as a result of the search of his person during a traffic stop was taken in violation of his Fourth Amendment rights and should be suppressed. Defendant contends that the stop was based on racial profiling, rather than on legitimate law enforcement interests, and that the officers had no reasonably articulable suspicion on which to base the pat-down search. The Government responds that the stop was not based on pretext, but on Officer Wilson's observation of two misdemeanors committed in his presence. The Government further responds that Officer Wilson was entitled to conduct a frisk based on a reasonably articulated concern for the safety of the officers during the stop.

## FACTS

Scarborough Police Officer Allen Wilson testified at the suppression hearing that shortly after 3:00 a.m. on December 13, 2001, while patrolling in a marked police vehicle, he observed a dark-colored BMW pull out of the Oakleaf Motel and begin traveling south on Route 1 near Scarborough Downs Road. As the vehicle passed him, he observed that it had no front license plate, which is a misdemeanor, so he decided to follow it. Officer Wilson testified that he observed a rear Maine license plate and ran it through the Department of Motor Vehicle database to see if the plate was valid. He obtained information that the plate attached to the BMW was registered to a Nissan Pathfinder, which constituted a separate, Class E misdemeanor. Officer Wilson testified that he decided to stop the vehicle, before it entered the Maine turnpike, for the incorrect rear license plate and for failing to have a front license plate. After seeing see two people in the car, Officer Wilson radioed

the dispatcher for backup. Officer Wilson then pulled over the vehicle, approached the driver, and requested the driver's license. The driver produced a Maine driver's license bearing the name, "James Lowry." When asked for his registration, Mr. Lowry searched around the car; he opened the glove compartment, reached between the seats, and behind his seat in the area of the rear floorboard, but failed to produce any registration.

Officer Wilson then asked the passenger in the vehicle, Oliver Steele ("Defendant"), for identification and he produced it. Officer Wilson testified that he ran a check of Defendant's license and learned that there were no warrants for his arrest. Officer Francis Plourde, the Scarborough Police supervisor that night, then arrived on the scene. Officer Wilson explained to Plourde that he had observed a lot of movement inside the car when he made the stop, and that he intended to arrest the driver. Both officers approached the vehicle and Officer Wilson took Mr. Lowry to his police cruiser and placed him under arrest for displaying improper plates.

Officer Plourde then observed a small knife inside the car, which was between the two front seats, below the dashboard, and immediately forward of the gear shifter. It appeared to be a stainless steel metal knife, approximately four inches long, and it was closed. He asked Defendant to step outside and to the front of the vehicle, and Defendant complied. Officer Plourde reached into the car, took the knife and told Defendant he could get back into the car. Officer Plourde placed the knife on the trunk of the BMW.

Officer Wilson then reapproached the passenger side of the vehicle and saw the knife on the trunk. Officer Plourde informed him that it had come from the interior of the vehicle. Officer Wilson testified that his intention was to frisk Defendant and, incident to the arrest of Lowry, to search the vehicle "for weapons or drugs." At the suppression hearing, Officer Wilson testified that the presence of the knife found inside the car did not enter into his decision to frisk Defendant. Officer Wilson opened the passenger door and asked Defendant to step out and move towards the front of the vehicle. Defendant got out of the car and complied with the request. Officer Wilson then asked Defendant if he had any weapons or drugs,[1] and he said that he did not. Defendant was wearing jeans and a large coat that came over his waist to his mid-thigh. Defendant first raised his hands, and he then put his hands into his front pants pocket and began pulling several items out, tossing them on the hood. Officer Wilson testified that he told Defendant to keep his hands out of his pockets and that Defendant said okay but, nevertheless, put his hands back in his pockets three times.[2] One of the items Defendant removed from his pocket was a small penknife or pocketknife; it was white and engraved with images of northern Maine.[3] Officer Wilson grabbed Defendant's wrist, held it, and then physically put both of Defendant's hands on the hood of the car. Officer

---

1. Officer Plourde testified that Officer Wilson asked Defendant, "Do you have anything on you?"

2. Officer Wilson stated that Defendant had been cooperating with instructions up until he got out of the car for the second time, when he failed to follow the instruction to keep his hands out of his pockets. The several items

Defendant removed from his pockets included: a cell phone, keys, money, and a penknife.

3. Officer Wilson incorrectly told the grand jury that the larger hunting knife had come from Defendant's pocket.

Wilson told Defendant to keep his hands on the car.

Officer Wilson then started to frisk Defendant on his left side, first feeling his pants pocket, then squeezing his coat pocket to check for weapons; he did not feel anything in the left pocket.[4] He then patted Defendant's rear pants pockets and felt nothing. Officer Wilson testified that he felt Defendant's right front pants pocket, and then grabbed his right coat pocket, squeezed it, and felt "a hard metal object inside." Officer Wilson testified that the object "felt like it could have been a knife." Officer Wilson further testified that he "reached into Defendant's pocket without looking and grabbed a handful of whatever it was," extracting "the entire contents of Defendant's pocket." Officer Wilson was not wearing gloves. He looked at what he had removed and saw a pipe and a plastic bag with a hard yellow substance that he believed to be crack cocaine. After finding these items, Officer Wilson placed Steele in handcuffs and placed him under arrest for the possession of crack cocaine.

## DISCUSSION

■ The original stop of the car was justified based on Officer Wilson's observation of two motor vehicle violations.[5] Officer Wilson arrested Mr. Lowry for these violations and intended to conduct a search

4. On cross-examination, Officer Wilson stated that, although he had asked Defendant whether he had any illegal drugs, he was not planning to search for drugs, rather he was "searching for weapons at the time." Officer Wilson said that he did not tell Defendant that he was going to search him before doing so.

5. *See,* 17–A M.R.S.A. § 15(B) (permitting arrest of person committing class E crime in presence of law enforcement officer); § 29–A M.R.S.A. § 2104(1) (improper attachment of a registration plate).

6. In *Michigan v. Long,* 463 U.S. 1032, 1034–35, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983),

of the passenger compartment of the vehicle, incident to the arrest. *See New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981) ("when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile").[6] Before a search of the vehicle was conducted, Officer Plourde observed a hunting knife in plain view inside the car. "Under the 'plain-view' doctrine, during a lawful search, police may seize an object in plain view without a warrant if 'its incriminating character is immediately apparent ....'" *United States v. Proctor,* 148 F.3d 39, 42–43 (1st Cir.1998) (citing *Minnesota v. Dickerson,* 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993)). Defendant argues that a frisk of Defendant for the officer's safety was unwarranted because "there is nothing unlawful or suspicious about the presence in plain view in a vehicle of a closed knife of the type found in this case."[7] Defendant's Post–Hearing Brief (Docket No. 9) at 3. Although Defendant contends that this hunting or buck knife could not reasonably have raised suspicion about him, common sense dictates that Officer Plourde properly removed the four-inch knife from the car as a potentially dangerous weapon.

■ The Supreme Court, in *Maryland v. Wilson,* 519 U.S. 408, 117 S.Ct. 882, 137

the Supreme Court held that, under the principles articulated in *Terry,* "a protective search for weapons could extend to an area beyond the person [*i.e.,* the passenger compartment of a car, even] in the absence of probable cause to arrest." *Id.,* 463 U.S. at 1034–35, 103 S.Ct. 3469.

7. Defendant maintains that the officers lacked a reasonable suspicion to conduct a *Terry* frisk because the hunting knife "could not reasonably be thought to be a weapon." Def. Post–Hearing Brief at 2.

L.Ed.2d 41, 117 S.Ct. 882 (1997), held that a police officer making a traffic stop may order passengers to get out of the car pending completion of the stop. *Id.*, at 410, 117 S.Ct. 882 (holding that "the rule of *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (*per curiam*), that a police officer may as a matter of course order the driver of a lawfully stopped car to exit his vehicle, extends to passengers as well.") As a passenger in a car with improper license plates, Defendant's expectation of privacy was reduced. *See, e.g., Wyoming v. Houghton,* 526 U.S. 295, 303, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999) ("Passengers, no less than drivers, possess a reduced expectation of privacy with regard to the property that they transport in cars, which trave[l] public thoroughfares") (internal quotations omitted). Having lawfully stopped the vehicle, after arresting Mr. Lowry, and after seizing the hunting knife from the car, the officers were entitled to ask Defendant to step outside the car.[8]

■■■ Once Defendant was removed from the car the events that transpired raised a concern that Defendant was involved in criminal activity. The Supreme Court in *Terry* held:

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

*Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). " 'The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or the safety of others was in danger.' " *United States v. Taylor,* 162 F.3d 12, 17 (1st Cir.1998) (quoting *Terry,* 392 U.S. at 23–24, 88 S.Ct. 1868, 20 L.Ed.2d 889). The "two-pronged inquiry" concerns " 'whether the officer's action was justified at its inception, and whether the action taken was reasonably related in scope to the circumstances which justified the interference in the first place.' " *Id.* at 18 (quoting *Terry,* 392 U.S. at 20, 88 S.Ct. 1868).

> To satisfy the first prong, " 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' " *United States v. Kimball,* 25 F.3d 1, 6 (1st Cir.1994) (quoting *Terry,* 392 U.S. at 21, 88 S.Ct. 1868). To satisfy the second prong, we examine the totality of the circumstances, *see United States v. Cruz,* 156 F.3d 22, 26 (1st Cir.1998), bearing in mind that "it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties," *Terry,* 392 U.S. at 23, 88 S.Ct. 1868, 20 L.Ed.2d 889.

*Id.* "If the frisk goes beyond what is necessary to determine if the suspect is armed,

---

**8.** Officer Plourde testified that he asked Defendant to get back into the car after removing the knife because Officer Wilson was in charge of the stop, and Officer Plourde was only there to provide backup.

its fruits will be suppressed." *United States v. Campa,* 234 F.3d 733, 737–38 (citing *Dickerson,* 508 U.S. at 373, 378–79, 113 S.Ct. 2130, 124 L.Ed.2d 334, and *United States v. Schiavo,* 29 F.3d 6, 9 (1st Cir.1994) (affirming suppression where officer's continued exploration of a bulging paper bag in suspect's pocket " 'after having concluded that it contained no weapon was unrelated to the sole justification of the search under Terry' ") (quoting *Dickerson,* 508 U.S. at 378, 113 S.Ct. 2130)).

■ Defendant argues that Officer Wilson's suspicion that criminal activity was taking place when he ordered Defendant out of the car the second time was unfounded because he had no basis for inquiring whether Defendant had any drugs on his person. Defendant alleges that Officer Wilson conducted the stop based on a racial pretext:

> It is no great leap to conclude that the officer thought it indicative of *illegal drug activity* that a black man was in a car leaving a motel in Scarborough, Maine at three in the morning. That, the Defendant respectfully submits, was the real motivation for the patdown search of his person.

Defendant's Post–Hearing Brief at 3 (emphasis in original). The Government responds that the stop was not based on pretext, but on Officer Wilson's observation of two misdemeanors being committed in his presence. The Government further responds that the officers' had a reasonably articulable fear for their safety based on the presence of the hunting knife. The Government also points to the totality of circumstances, including the discovery of the penknife, and Defendant's repeated disobedience of Officer Wilson's order to refrain from putting his hands in his pockets, all of which justified the frisk of Defendant and, ultimately, the discovery of the pipe and the crack cocaine. Defendant

responds that because the smaller pocketknife was found *after* the officer made the decision to conduct a pat-down frisk, its presence could not have entered into Officer Wilson's decision to frisk.

In assessing a challenge to the Fourth Amendment, the Court considers the objective reasonableness of an individual officer's conduct, rather than the officer's actual subjective motivations. *Proctor,* 148 F.3d at 42 (citing *Whren v. United States,* 517 U.S. 806, 814, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)). Although Defendant argues that Officer Wilson's decision to search him was made before the discovery of the pocketknife, the court assesses the information available to the officers at the time the frisk was actually performed. Courts have upheld pat-down searches of passengers who exhibit suspicious behavior. *See, e.g., United States v. Moorefield,* 111 F.3d 10, 13–14 (3rd Cir.1997) (defendant's furtive hand movements and refusal to obey officers' order provided specific, articulable facts to support belief that defendant was armed and thus, warranted pat-down *Terry* search of defendant for weapons), *United States v. Hassan El,* 5 F.3d 726, 731 (4th Cir.1993) (upholding search in which officer grabbed at bulge through open car window and removed handgun), *United States v. Mitchell,* 951 F.2d 1291, 1294–95 (D.C.Cir.1991) (upholding pat-down search of passenger who obeyed order to exit car based on his furtive hand movements); *see also, Mimms,* 434 U.S. at 109, 98 S.Ct. 330 (having pulled over an automobile for the routine traffic violation of having an expired license tag, despite concededly having "no reason to suspect foul play from the particular driver at the time of the stop," officer was justified in asking driver to step out of the vehicle), *United States v. Woodrum,* 202 F.3d 1, 7 (1st Cir.2000) (forgoing resolution of the reasonable suspicion inquiry, but citing *United States v.*

*Sokolow*, 490 U.S. 1, 9, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), for proposition that "a combination of independently innocent behaviors and circumstances, both general and specific, can create reasonable suspicion in certain cases"). Before Officer Wilson conducted the pat-down, the circumstances included: (1) the movement Officer Wilson had observed inside the vehicle when he initiated the stop, (2) a hunting knife in plain view in the front seat of the car, (3) a small penknife produced from Defendant's pocket *after* he had stated that he had no weapons on his person, and (4) Defendant's disobeying Officer Wilson's repeated requests to keep his hands out of his pockets. Officer Wilson intended to search the passenger compartment of the vehicle incident to the arrest of its driver, Mr. Lowry, and it was reasonable to secure the passenger before doing so.

## CONCLUSION

Officer Wilson had probable cause to stop and arrest Mr. Lowry because he had committed a misdemeanor in his presence. The presence of two occupants in the vehicle heightened the danger of the stop, and Officer Wilson testified that he called for backup for this reason. *See Wilson*, 519 U.S. at 414, 117 S.Ct. 882 ("the danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car"). Officer Wilson had observed a lot of movement inside the car at the time of the initial stop. Officer Wilson was entitled to conduct a search of the vehicle incident to Mr. Lowry's arrest. Officer Plourde observed in plain view and properly seized a knife from the interior of the vehicle. The officers were authorized to remove Defendant, the passenger, from the vehicle. In the course of *Terry* questioning, Defendant repeatedly disobeyed Officer Wilson's lawful orders to keep his hands out of his pockets and voluntarily removed a small pocket knife from his pocket. Officer Wilson properly concluded that Defendant's actions justified a pat-down frisk pursuant to *Terry*. The Court **CONCLUDES** that the totality of the circumstances provided reasonable suspicion to authorize a pat-down frisk of Defendant for weapons.

Finally, the search was conducted within its proper scope. "[T]he 'plain-feel' doctrine permits an officer who 'lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent' to seize the contraband." *Proctor*, 148 F.3d at 43 (citing *Dickerson*, 508 U.S. at 375, 113 S.Ct. 2130, 124 L.Ed.2d 334). While performing the frisk for weapons, Officer Wilson testified that he thought the hard object in Defendant's pocket "could have been a knife." Officer Wilson was entitled to remove the hard object from Defendant's pocket in order to determine whether it was, indeed, a knife. The objects that Officer Wilson removed from the right-hand pocket of Defendant's jacket did not turn out to be another knife, but a pipe designed to be used to smoke crack cocaine and a plastic baggy containing crack cocaine. The crack cocaine was, therefore, properly found and seized by him in the course of a legitimate *Terry* frisk of Defendant, conducted to assure the safety of the officers at the scene.

Accordingly, the Court **ORDERS** that Defendant's Motion to Suppress be, and it is, hereby, **DENIED**.