COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Petty and Senior Judge Willis
Argued at Chesapeake, Virginia


WILLIAM JOHN MILLER

                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 0326-08-1                       JUDGE JERE M. H. WILLIS, JR.
                                                        NOVEMBER 4, 2008
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                        Everett A. Martin, Jr., Judge

        Christian L. Connell for appellant.

        Benjamin H. Katz, Assistant Attorney General (Robert F. McDonnell,
        Attorney General, on brief), for appellee.


        William John Miller appeals his conviction for possession of cocaine with intent to

distribute in violation of Code § 18.2-248.  He contends the trial court erred by failing to grant his

motion to suppress evidence seized from his person, arguing that the evidence was obtained as the

result of an illegal pat-down search.  Finding no error, we affirm the judgment of the trial court.

                                        Background

        "Under familiar principles of appellate review, we view the evidence and all reasonable

inferences fairly deducible from that evidence in the light most favorable to the Commonwealth, the

party that prevailed below."  Banks v. Commonwealth, 41 Va. App. 539, 543, 586 S.E.2d 876, 877

(2003).

        On November 15, 2006 at approximately 3:00 a.m., Officer Keenan Gilligan responded to a

"narcotics-in-progress" call, reporting to a motel.  As he approached the motel, Gilligan saw Miller

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

standing in the middle of the motel parking lot. Gilligan testified that several police vehicles drove into the parking lot, passing Miller. As Gilligan drove into the parking lot, he had direct eye contact with Miller, who "almost immediately" started to walk toward the exit of the parking lot at a "very fast pace." Gilligan stopped and asked Miller if he could talk to him. Miller said nothing, but he walked back to the patrol vehicle. Gilligan asked Miller for proof of identification. Miller had none. However, he provided his name, birth date, and social security number.

Gilligan testified Miller was "fidgeting a lot." He was constantly moving his hands and shifting his weight from side to side, and he was "very nervous." When Gilligan asked Miller what he was doing in the motel parking lot, Miller responded that he had just been "dropped off" by someone he could not name. Miller was also unable to say where he had been prior to arriving at the parking lot or why he was standing in the parking lot. Miller acknowledged that he was not a registered guest of the motel and that he had not notified motel personnel that he was a visitor at the motel.

Based on Miller's answers and nervous demeanor, Gilligan asked Miller whether he possessed any weapons, drugs, contraband, or anything he should be "worried about." Miller replied, "No." He refused Gilligan's request to search him. Gilligan then told Miller he was going to pat him down "for officer safety." Gilligan testified he was not searching "for anything," but he was "making sure [Miller] had no weapons or anything that could hurt [him] or any of the other officers who were in the area."

Gilligan asked Miller to turn and place his hands on top of his head. Miller complied. Gilligan asked Miller a second time whether he had any weapons. Miller started to reach for his right pocket, responding that he had a knife. Miller put his hands back on top of his head, and Gilligan told Miller he was going to retrieve the knife. When Gilligan reached into Miller's pocket, several blue plastic baggies containing crack cocaine fell from the pocket. Gilligan arrested Miller

for possession of cocaine and searched him incident to the arrest, recovering a total of fifteen bags of cocaine.

The trial court denied Miller's motion to suppress the evidence, holding that Gilligan had articulated his concern for officer safety, thereby justifying the pat-down search. Miller entered a conditional guilty plea to the charge, reserving his right to appeal the denial of the motion to suppress.

Analysis

> A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo on appeal. Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002); Bolden v. Commonwealth, 263 Va. 465, 470, 561 S.E.2d 701, 704 (2002); McCain v. Commonwealth, 261 Va. 483, 489, 545 S.E.2d 541, 545 (2001); see also Ornelas v. United States, 517 U.S. 690, 691, 699 (1996). In making such a determination, we give deference to the factual findings of the circuit court, but we independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment. Bolden, 263 Va. at 470, 561 S.E.2d at 704; McCain, 261 Va. at 490, 545 S.E.2d at 545; Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 924 (2000). The defendant has the burden to show that, considering the evidence in the light most favorable to the Commonwealth, the circuit court's denial of his suppression motion was reversible error. Bolden, 263 Va. at 470, 561 S.E.2d at 704; McCain, 261 Va. at 490, 545 S.E.2d at 545; Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980).

Cost v. Commonwealth, 275 Va. 246, 250, 657 S.E.2d 505, 507 (2008).

"[D]uring an investigative stop, a law enforcement officer may conduct a limited search for concealed weapons if the officer reasonably believes that a criminal suspect may be armed and dangerous." Id. at 250-51, 657 S.E.2d at 507 (citing Terry v. Ohio, 392 U.S. 1, 27 (1968)) (other citations omitted).

Miller concedes the consensual nature of the initial stop. He contends only that the pat down for weapons was not supported by a reasonable belief that he might be armed and dangerous.

To conduct a pat-down search, the officer "does not have to be absolutely certain that the person is armed." Simmons v. Commonwealth, 217 Va. 552, 556, 231 S.E.2d 218, 221 (1977). Rather, if a "reasonably prudent man in the circumstances" would similarly believe that "his safety or that of others was in danger," the search is justified. Terry, 392 U.S. at 27.

In determining whether the officer acted reasonably, the court should consider all relevant factors, including the characteristics of the area in which the stop occurred, the time of day, the conduct and demeanor of the suspect, and the type of offense that the officer was investigating. United States v. Bull, 565 F.2d 869, 870-71 (4th Cir. 1977). See also Williams v. Commonwealth, 4 Va. App. 53, 66-67, 354 S.E.2d 79, 86-87 (1987).

Miller argues that his nervous behavior and his conduct of walking quickly toward the exit of the parking lot did not justify a pat down for weapons. However, in addition to that conduct, Gilligan also testified that his encounter with Miller took place in the parking lot at 3:00 a.m. when officers were responding to a "narcotics-in-progress" call. "The relationship between the distribution of controlled substances . . . and the possession and use of dangerous weapons is . . . well recognized." Logan v. Commonwealth, 19 Va. App. 437, 445, 452 S.E.2d 364, 369 (1994) (citations omitted). See also Williams, 4 Va. App. at 67, 354 S.E.2d at 87 ("[S]uspicion of narcotics possession and distribution . . ., standing alone, gives rise to an inference of dangerousness . . . .").

Furthermore, Miller admitted he was not a registered guest at the motel, and he gave no credible account for his reason for being there or how he came to be in the parking lot. Gilligan testified that he patted down Miller for his safety and for the safety of other officers at the scene.

A reasonably prudent police officer, under these circumstances, would have reacted similarly for his protection and the protection of others.

For the foregoing reasons, we hold the trial court did not err in denying Miller's motion to suppress. We, accordingly, affirm his conviction.

<u>Affirmed.</u>

Kelsey, J., concurring.

I agree with the majority that the trial court correctly denied Miller's suppression motion. I write separately only to emphasize the importance of Miller's admission that he had a knife.

When officers say they intend to pat down a suspect despite his lack of consent, the announcement alone constitutes an assertion of authority for purposes of a Terry stop. See Bandy v. Commonwealth, 52 Va. App. 510, 517, 664 S.E.2d 519, 522 (2008); Walker v. Commonwealth, 42 Va. App. 782, 790, 595 S.E.2d 30, 34 (2004). A suspect submitting to such an assertion of authority has been seized — thus requiring, at the moment of the announcement, the officer to reasonably believe the suspect may be engaged in criminality.

On the other hand, a Terry pat down occurs only when the officer actually performs the pat down. See, e.g., State v. Wilks, 2004 Ohio 4046 (Ohio Ct. App. 2004) (holding that while the officer's statement was a "'show of authority' it was not a pat down until he actually conducted it"). Only then must the officer reasonably believe the suspect is armed and dangerous. Cf. United States v. Steele, 195 F. Supp. 2d 202, 206 (D. Me. 2002) ("Although Defendant argues that Officer Wilson's decision to search him was made before the discovery of the pocketknife, the court assesses the information available to the officers at the time the frisk was actually performed."). Consequently, absent egregious circumstances, a "premature announcement of an intent to perform a pat-down does not debilitate the officer so that he will not later be able to perform a pat-down should sufficient facts come to light." State v. Smith, 637 A.2d 158, 168 (N.J. 1994). This principle parallels the general rule that Fourth Amendment violations should be measured "by what the officer did rather than what he said." 4 Wayne R. LaFave, Search & Seizure § 9.2(e), at 320-21 (4th ed. 2004).

In this case, when Officer Gilligan announced his intention to conduct a pat down, Miller responded by lifting his hands and submitting to the officer's assertion of authority. Before the

officer ever touched him, however, Miller stated he possessed a knife and reached for his pocket to retrieve it.  Only then did the officer physically seize the knife.  Miller's admission, therefore, fully confirmed the reasonableness of the officer's earlier suspicion and rendered the actual pat down invulnerable to a constitutional challenge.  See, e.g., State v. King, 2004 Ohio 2598 n.3 (Ohio Ct. App. 2004) (noting the appellant's admission "to having the weapon in his pocket before the commencement of the pat-down" itself brought the search within the permissible "scope of the Fourth Amendment").