795 So.2d 1146 (2000)
STATE of Louisiana
v.
Paul JAMES.
No. 99-K-3304.
Supreme Court of Louisiana.
December 8, 2000.
Jerry Lourel Fontenot, Counsel for Applicant.
Richard P. Ieyoub, Attorney General, Walter P. Reed, District Attorney, Scott Chandler Gardner, Dorothy Ann Pendergast, Counsel for Respondent.
PER CURIAM:
In Arkansas v. Sanders, 442 U.S. 753, 764, n. 13, 99 S.Ct. 2586, 2593, 61 L.Ed.2d 235 (1979), rev'd on other grounds, California v. Acevedo, 500 U.S. 565, 111 S.Ct. *1147 1982, 114 L.Ed.2d 619 (1991), the Supreme Court observed that "[n]ot all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment .... some containers ... by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance." Containers of such distinctive character have included the tied-off balloon filled with heroin spotted by the police in plain view in Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), the silver, duct-taped "kilo brick" observed by the officers in United States v. Prandy-Binett, 995 F.2d 1069 (D.C.Cir.1993), and the glassine bag filled with marijuana within the "plain feel" of the police in United States v. Proctor, 148 F.3d 39 (1st Cir.1998).
In the present case, the closed container seized from relator's pocket during an investigatory stop was an ordinary film canister, an object with a myriad of legitimate uses but one also associated with drug trafficking. See United States v. Coleman, 179 F.3d 1056, 1059 (7th Cir. 1999), cert. denied, 528 U.S. 957, 120 S.Ct. 387, 145 L.Ed.2d 302 (2000). The association prompted the police officer to remove the canister from relator's pocket and to shake it to determine the canister's contents, if any, before he opened it to his visual inspection. Overturning the trial court's grant of relator's motion to suppress the evidence, the court of appeal concluded that the officer had probable cause to seize and search the container. We granted relator's application to reverse the court of appeal's judgment because the officer's "probing tactile examination" of the closed container to determine its contents exceeded the scope of a reasonable search permitted by the Fourth Amendment. Bond v. United States, 529 U.S. 334, 120 S.Ct. 1462, 1464, 146 L.Ed.2d 365 (2000).
The circumstance under which the police seized and searched the film canister found in relator's possession are not in dispute. At the hearing on relator's motion to suppress, Deputy LaPueble, who was patrolling alone, testified that he received a dispatch to investigate a report of drug dealing at the "In and Out" convenience store in Slidell. The store's owner had called to complain that an African-American male sporting dreadlocks, a gray shirt, and blue jeans, was selling narcotics in the parking lot. Deputy LaPueble indicated that he was already familiar with the store from the numerous narcotics arrests he had made in the parking lot.
Upon arriving at the store, the deputy saw relator, who fit the description given by the store's owner. The deputy then approached relator and asked him what he was doing in the parking lot. According to Deputy LaPueble, relator replied that he was allowing his "old dog [to] take a break under the tree towards the back side of the building." At this point, Deputy LaPueble became suspicious and conducted a pat-down of the defendant for safety reasons. While checking the defendant's pants pocket, the deputy felt an object he believed was a film canister. He then removed the object from the defendant's pocket, shook it, and determined that "there was something inside." As Deputy LaPueble opened the film canister, revealing the cocaine hidden inside, relator bolted. He was eventually apprehended and charged with possession of cocaine with intent to distribute within 1,000 feet of property used for school purposes. La. R.S. 40:967(A)(1); La.R.S. 40:981.3.
At the suppression hearing, Deputy LaPueble estimated that he had participated in approximately 300 drug arrests and that over 100 of those arrests had involved film canisters. According to the officer, the containers most frequently associated with *1148 drug trafficking are "[b]lack film canisters, matchboxes, plastic bags." The state and the defense stipulated that the defendant did not have any photographic equipment in his possession at the time of his arrest.
At the close of the hearing, the trial judge agreed with the state that up to the point Deputy LaPueble removed the canister from relator's pocket and shook it, the officer had acted legally in stopping relator on the basis of the complaint made by the owner of the convenience store and in conducting a brief, self-protective frisk for weapons. La.C.Cr.P. art. 215.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Nevertheless, while fully aware that an officer who "lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent" may seize the object, Minnesota v. Dickerson, 508 U.S. 366, 375, 113 S.Ct. 2130, 2136-37, 124 L.Ed.2d 334 (1993), the trial court ruled that because "the canister itself was not the contraband," and the officer could not feel the cocaine inside the closed container, LaPueble's shaking of the film canister and then removing its top to peer inside exceeded the limits of a valid Terry stop.
The state sought review in the court of appeal which issued a brief order reversing the judgment of the trial court. State v. James, 97-2790 (La.App. 1st Cir.1/22/98), writ denied, 98-0428 (La.3/27/98), 716 So.2d 893 (Calogero, C.J, Kimball and Johnson, JJ., to grant). On remand, the trial court vacated its original ruling and denied the motion to suppress. Thereafter, relator entered a guilty plea to a reduced charge of possession of cocaine with intent to distribute, reserving his right to appeal from the trial court's final, adverse ruling on the motion to suppress. See State v. Crosby, 338 So.2d 584 (La. 1976). On appeal, the First Circuit exercised its discretion to reconsider the merits of its pre-trial order, see State v. Humphrey, 412 So.2d 507, 523 (La.1981) (on reh'g), and issued a full opinion upholding the legality of the seizure and subsequent search of relator's film canister. State v. James, 98-2348 (La.App. 1st Cir.6/25/99), 740 So.2d 200. Relying on the Supreme Court's explication of the "plain view" doctrine in Texas v. Brown, 460 U.S. at 741-43, 103 S.Ct. at 1543-44, the First Circuit held that "[u]nder the totality of circumstances, Lapueble had probable cause to believe the film canister was concealing contraband, thus justifying the search of the canister and the seizure of the contents." James, 98-2348 at 7, 740 So.2d at 205.
The court of appeal's reliance on Texas v. Brown was misplaced. In Brown, the tied-off balloon filled with heroin came under the officer's visual inspection when the defendant, stopped by the police at a routine driver's license checkpoint, removed the object from his pocket and placed it beside his leg on the seat of the vehicle he was driving. The officer could also see into the vehicle's glove compartment, opened by the defendant to retrieve his registration, and observed plastic vials, a quantity of loose white powder, and an open package of party balloons. Given the officer's knowledge "both from his participation in previous narcotics arrests and from discussions with other officers, that balloons tied in the manner of the one possessed by Brown were frequently used to carry narcotics," and given the officer's observation of the opened glove compartment "which revealed further suggestions that Brown was engaged" in narcotics activities, the Court concluded that "[t]he fact that [the officer] could not see through the opaque fabric of the balloon is all but irrelevant: the distinctive character of the balloon itself spoke volumes as to its contents particularly to the trained eye of the officer." Brown, 460 U.S. at 743, 103 S.Ct at 1543-44. Concurring in the result, *1149 460 U.S. at 751, 103 S.Ct. at 1548, Justice Marshall elaborated on the significance of the balloon's "distinctive character:"
[T]he balloon could be one of those rare single-purpose containers which `by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance' [quoting Sanders ]. Whereas a suitcase or a paper bag may contain an almost infinite variety of items, a balloon of this kind might be used only to transport drugs. Viewing it where he did could have given the officer a degree of certainty that is equivalent to the plain view of the heroin itself.
On the other hand, "[p]hysically invasive inspection is simply more intrusive than purely visual inspection." Bond, 120 S.Ct. at 1464. The container involved in Bond was a canvas bag, the defendant's carry-on luggage, which he had placed in the overhead bin of a bus traveling from California to Arkansas along a route which took it to a permanent Border patrol checkpoint in Texas. The Border Patrol agent who boarded the bus subjected the bag to a "probing tactile examination" by squeezing it in an "exploratory manner," manipulation which revealed a "brick-like" object. Upon opening the bag, the agent found a "brick" of methamphetamine wrapped in duct tape and rolled in a pair of pants. Because the defendant had exhibited a subjective expectation of privacy by placing the contents of the bag in an opaque container which he then placed above his seat on the bus, and could not reasonably expect that other passengers or bus employees would feel the bag in an exploratory manner, the Court concluded that "the agent's physical manipulation of petitioner's bag violated the Fourth Amendment." Bond, 529 U.S. at 339, 120 S.Ct. at 1465.
In Bond, and unlike Brown or the present case, the Border Patrol agent lacked any particularized suspicion of criminal conduct associated with possession of the closed container. Nevertheless, while Officer LaPueble knew from experience that film canisters are frequently used to carry contraband, as are match boxes and paper bags, see United States v. Schiavo, 29 F.3d 6 (1st Cir.1994); State v. Parker, 622 So.2d 791, 795 (La.App. 4th Cir.), writ denied, 627 So.2d 660 (La.1993), and a plethora of other ordinary containers ranging from the canvas bag in Bond to the tin cans and backpack in Colorado v. Bertine, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), film canisters are not so peculiarly associated with drug trafficking that the plain feel or view of their outer surfaces is the functional equivalent of the plain view or feel of their contents, i.e., they are not personal "effects" for purposes of the Fourth Amendment because they no longer support any reasonable expectation of privacy. The film canister did not "correspond with rocklike crack cocaine, or the twigs and leaves of marijuana, or capsules containing prescription drugs." United States v. Gibson, 19 F.3d 1449, 1451 (D.C.Cir.1994). The deputy therefore had to remove the object from relator's pocket, confirm that it was a film canister, and manipulate it before determining that its contents were probably contraband and not a roll of film.
Under certain circumstances, a search incident to and contemporaneous with an arrest based on probable cause may precede a formal arrest to preserve evidence of a crime. Rawlings v. Kentucky, 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980)(To the extent that the defendant had already admitted ownership of the drugs found in the purse of a female acquaintance, "[w]here the formal arrest following quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important *1150 that the search preceded the arrest rather than vice versa."); State v. Melton, 412 So.2d 1065, 1068 (La.1982) ("Where there is probable cause but no formal arrest, a limited search to preserve evidence is justified.") (citing Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973)). However, in Rawlings, the defendant admitted to criminal activity, and in Melton, the police observed criminal conduct when the defendant placed a plastic bag filled with white capsules in one of his boots as the officers approached. In both cases, the officers had thereby gained first-hand knowledge that the defendant was committing a crime and had probable cause to arrest him before they retrieved the challenged evidence.
In the present case, Officer LaPueble did not observe relator committing a crime, did not talk to the convenience store owner before conducting his investigatory stop, did not ask relator what he had in his pocket, and could not determine the contents of the canister, i.e., could not particularize the association of film canisters with narcotics trafficking to the circumstances as he knew them at the time he reached into relator's pocket, until he brought the canister to light and conducted both a tactile exploration of its outer surface and a visual inspection of its interior. However, "[i]t is axiomatic that an incident search may not precede an arrest and serve as part of its justification." Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).
We therefore agree with the trial judge that while the complaint made by the convenience store owner provided Officer LaPueble with reasonable grounds for an investigatory stop, State v. McGary, 397 So.2d 1305, 1307 (La.1981), and the frequent association of narcotics trafficking with firearms justified the officer's brief, self-protective frisk of relator's outer clothing, United States v. Trullo, 809 F.2d 108, 113-14 (1st Cir.1987), the officer exceeded the scope of a valid Terry stop when he removed the canister from relator's pocket and began manipulating it to determine its contents. At that point, the officer had embarked on "the sort of evidentiary search that Terry expressly refused to authorize...." Minnesota v. Dickerson, 508 U.S. at 378, 113 S.Ct. at 2139. Relator's flight in response to the officer's unjustified conduct therefore did not constitute an abandonment of his privacy interests in the closed container. State v. Chopin, 372 So.2d 1222, 1224 (La. 1979); see also 1 Wayne R. LaFave, Search and Seizure, § 2.6(b), p. 584 (3rd ed. 1996) ("`Property is not considered abandoned when a person throws away incriminating articles due to the unlawful activities of police officers.'") (quoting State v. Reed, 284 So.2d 574, 575 (La. 1973)).
Accordingly, the decision of the court of appeal is reversed, the trial court's original judgment granting the motion to suppress is reinstated, and this case is remanded to the district court for further proceedings consistent with the views expressed herein.
TRAYLOR, J., dissents and assigns reasons.
KNOLL, J., concurs and assigns reasons.
TRAYLOR, Justice (dissenting).
I agree with the court of appeal that the motion to suppress was properly denied. After reviewing the facts and circumstances, coupled with the experience of the sheriff deputy, it was reasonable for the deputy to believe that the film canister contained contraband. The facts reveal that the sheriff deputy received information from an eyewitness that a man, fitting defendant's description, was selling narcotics *1151 in the parking lot of the store. The sheriff deputy was familiar with the area and had made over 100 stops involving suspicion of narcotics. Thus, based on his experience and the information provided to the deputy prior to his arrival at the scene, it was the sheriff deputy's reasonable belief that defendant was in possession of narcotics. Once the film canister was revealed, the deputy, utilizing his vast experience, determined that the canister likely contained drugs. Based on the totality of the circumstances, I agree with the court of appeal that the requirements of the plain-feel and plain-view doctrines are satisfied, and that the search and seizure of the cocaine was valid.
KNOLL, Justice (concurring).
For the following reasons, I concur with the majority in the reversing of the court of appeal's decision. In Brown, the plurality noted that the jurisprudence reflects "the rule that if, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately." Texas v. Brown, 460 U.S. 730, 739, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). The rule "merely reflects an application of the Fourth Amendment's central requirement of reasonableness to the law governing seizures." Id. Here, the majority held that LaPueble "could not particularize the association of film canisters with narcotics trafficking to the circumstances as he knew them at the time he reached into relator's pockets." I concur to emphasize that the officer practically had enough information to provide him with probable cause that the film canister contained contraband without the officer's ability to feel the contraband due to the hard case of the canister. The record reveals the following facts that raised LaPueble's suspicion when he felt the film canister: (1) he was an experienced officer who worked narcotics for three to four year and made in the area of three hundred stops; (2) over a third of the stops he made, about one hundred, involved drugs concealed in film canisters; (3) when asked what he was doing in the store parking lot, the defendant said that he was letting his old dog take a break under the tree towards the back of a building; (4) the defendant had no film equipment in his possession as stipulated by the parties. However, the film canister and its contents were not immediately apparent. LaPueble could not feel the object's contour and mass and make its identity immediately apparent. His seizure of the film canister went beyond the sense of touch to determine the incriminating character of the film canister. LaPueble had to make a further search of the object in the defendant's pocket to determine its incriminating character. LaPueble had to reach into the defendant's pocket, remove the canister, shake it, and then open it to look inside before he could determine the object's incriminating character. Clearly, this search constitutes an invasion of a legitimate expectation of privacy. It cannot be said the film canister was in open view, nor was it viewed by LaPueble from a lawful vantage point. The search and seizure of the film canister was not a search independent of the initial intrusion that gave LaPueble his vantage point. Notwithstanding, I recognize that there are circumstances under which it may be reasonable to seize film canisters and other containers despite the inability of the officer to "feel" the contraband inside the container if the surrounding circumstances make it immediately apparent that the container holds contraband. However, in the present case, those surrounding circumstances are not sufficient.