817 So.2d 11 (2002)
STATE of Louisiana
v.
Tenna BENOIT, Jr.
No. 2001-KK-2712.
Supreme Court of Louisiana.
May 14, 2002.
*12 Richard P. Ieyoub, Attorney General, Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Nancy A. Miller, for applicant.
Christopher B. Edwards, for respondent.
TRAYLOR, J.
Defendant, Tenna Benoit, Jr., was stopped by a Jefferson Parish Sheriffs Deputy after he was observed operating his vehicle without wearing a safety belt, in violation of La.Rev.Stat. 32:295.1. Defendant displayed signs of intoxication and after failing a field sobriety test was arrested for driving while intoxicated. Defendant filed and was denied a motion to suppress the evidence by the trial court but the motion was later granted by the court of appeal. We granted writs in this matter to determine whether under La. Rev.Stat. 32:295.1 as amended in 1999, an unauthorized inspection of the motorist was conducted in this case. For reasons more fully set forth below, we conclude that no unauthorized inspection occurred. Accordingly, we reverse the court of appeal and reinstate the trial court judgement.

FACTS AND PROCEDURAL HISTORY
On October 12, 2000, the defendant, Tenna J. Benoit, Jr., stopped his motor vehicle next to Deputy Russell Blanchard III of the Jefferson Parish Sheriff's Office on Highway 90 in Avondale, Louisiana. Deputy Blanchard observed that the defendant was operating a motor vehicle without wearing a safety belt in violation of La.Rev.Stat. 32:295.1(A)(1). Based on this observation, Blanchard stopped the defendant and instructed him to exit his vehicle and walk toward the police unit. Upon exiting the vehicle, Blanchard noticed that the defendant used his truck for balance and was unsteady on his feet. As the defendant approached Blanchard, the deputy also noticed that the defendant slurred his speech and that his breath smelled of alcohol. Blanchard performed a field sobriety test, which the defendant failed. The defendant was informed of his rights and subsequently refused to submit to a breath analyzer test. Blanchard arrested the defendant and the State charged the defendant with operating a motor vehicle while intoxicated, third offense.
The defendant subsequently filed a pro forma motion to suppress,[1] then, after a suppression hearing, supplemented the filing with a memorandum urging the district court to suppress the results of the field sobriety test. The district court denied the motion.
The court of appeal granted writs, mistakenly ordered the defendant's conviction reversed,[2] and remanded the case to the trial court. State v. Benoit, 01-0810 (La. App. 5 Cir. 8/21/01). In a terse order, the court of appeal concluded that La.Rev. Stat. 32:295.1 forbids arrest when an officer *13 first requests a defendant out of the vehicle, then detects signs of intoxication, and thus the trial court erred in denying the defendant's motion to suppress. Id. This court granted writs. State v. Benoit, 01-2712 (La.1/25/02), 806 So.2d 662.

LAW AND DISCUSSION
The sole issue presented for consideration and resolution is whether Deputy Blanchard violated La.Rev.Stat. 32:295.1(F) when he ordered the defendant from the car, observed the defendant struggle for balance and slur his speech, conducted a field sobriety test, and arrested the defendant. Simply put, the question before us is whether Deputy Blanchard conduct an unauthorized inspection or search of the person of the defendant.
As a general matter, statutory interpretation begins "as [it] must, with the language of the statute." Bailey v. United States, 516 U.S. 137, 116 S.Ct. 501, 506, 133 L.Ed.2d 472 (1995). Where a statute is clear and unambiguous, and its application does not lead to absurd results, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. Civ.Code art. 9. Moreover, "[t]he plain meaning of legislation should be conclusive, except in the `rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters' [in which case] the intention of the drafters, rather than the strict language controls." United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)).
As a general rule, law enforcement officers of this state are authorized by law to stop and question individuals who are reasonably suspected of past, present, or future criminal activity. La.Code Crim. Proc. art. 215.1. However, the legislature has plenary authority to delineate and circumscribe the extent to which police may enforce the substantive criminal law.
The statute which led to the defendant's arrest in the instant case is clear and unambiguous. The Statute provides that the driver of a passenger car, van, or pickup truck "shall have a safety belt properly fastened about his or her body at all times when the vehicle is in forward motion." Additionally, sub-section (F) as amended in 1999 provides:
Probable cause for violation of this Section shall be based solely upon a law enforcement officer's clear and unobstructed view of a person not restrained as required by this Section. A law enforcement officer may not search or inspect a motor vehicle, its contents, the driver, or a passenger solely because of a violation of this Section. (emphasis added).
Thus, we must determine if Blanchard searched or inspected the defendant solely because of the defendant's lack of a properly fastened safety belt.
It is clear that Blanchard stopped the defendant solely because of the defendant's failure to fasten his safety belt properly. Although once forbidden by previous versions of La.Rev.Stat. 32:295.1,[3] such a stop is acceptable under the current version of the Statute which was in effect at the time of defendant's arrest. Accordingly, Blanchard did not violate the Statute in stopping the defendant.
Next, we must determine whether Blanchard's actions subsequent to the stop were unlawful. Pertinent to this determination is whether Blanchard's actions of *14 ordering the defendant out of the car, then observing the defendant's gait, his speech, and detecting the scent of his exhalations, constitutes a search or inspection. Under current Fourth Amendment jurisprudence, Blanchard's conduct clearly does not constitute a search. See generally, Wayne R. LaFave, Search and Seizure, § 2.1(a), 379 (1996); 79 C.J.S. Searches and Seizures § 8, 18-19, ("[T]he term [search] implies some exploratory investigation, or an invasion and quest, a looking for or seeking out.") (footnotes omitted). Accordingly, the propriety under Rev. Stat. 32:295.1 of Blanchard's order and subsequent observation of the defendant hinges upon the question of whether such behavior constitutes an inspection, and thus depends upon the "generally prevailing meaning," of inspection.
Black's Law Dictionary defines the word "inspection" as:
To examine; scrutinize; investigate; look into; check over; or view for the purpose of ascertaining the quality, authenticity or conditions of an item, product, document, residence, business, etc. Word has broader meaning than just looking, and means to examine carefully or critically, investigate and test officially, especially a critical investigation or scrutiny.
BLACK'S LAW DICTIONARY, 797 (6th ed.1990) (citations omitted).
The United States Supreme Court has used the word "inspection," to describe police conduct such as manipulating suitcases within a vehicle, Bond v. United States, 529 U.S. 334, 120 S.Ct. 1462, 1463, 146 L.Ed.2d 365; or flying over houses to view a private yard, Florida v. Riley, 488 U.S. 445, 109 S.Ct. 693, 697, 102 L.Ed.2d 835 (1989) (discussing "inspection" of defendant Riley, and "inspection" performed in California v. Ciraolo, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986)). Notably, in all cases where the police authority has been found to have conducted a search, physical steps were taken in order to search for specific contraband or evidence of illegal activity.
In Bond, a border patrol agent boarded a bus and verified that the passengers were properly in the country. Bond, 120 S.Ct. at 1463. Once the agent had determined that all of the passengers were legally in the United States, he began squeezing bags stored in the luggage rack. Id. In both Riley and Ciraolo, police flew aircraft over the defendants' houses and yards after receiving anonymous tips that the defendants were growing marijuana. Riley, 109 S.Ct. at 697. The Court referred to all of the above police conduct as inspections.
Likewise, this court has used the word inspect in conjunction with active police investigation. For example, in State v. James, 99-3304 (La.12/08/00), 795 So.2d 1146, 1147, a police officer subjected the contents of a film canister to his "visual inspection" only after shaking it and removing the cover. In State v. McHugh, 92-1852 (La.1/6/94), 630 So.2d 1259, 1261, a wildlife enforcement officer "inspected" the contents of an ice chest by opening the chest and subjecting its contents to close scrutiny. In both of these cases, the officer inspected the items only after manipulation of their containers, and with the particular purpose of determining whether the containers in question contained contraband. See James, 795 So.2d at 1147; McHugh, 630 So.2d at 1261.
This court has further narrowed the concept of inspection. For instance, when an officer sees readily observable contraband or evidence of wrongdoing in plain view, the officer cannot be said to have conducted a "close inspection." Cf., e.g., State v. Tate, 623 So.2d 908, 917 (La. *15 App. 4 Cir.1993) (evidence admissible under the "plain view" exception to warrant requirement if, inter alia, "close inspection" not required to identify it as contraband) (discussing Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)); State v. Hernandez, 410 So.2d 1381, 1383 (La.1982). An inspection cannot be said to take place where an officer casually looks at the actions of his detainee or smells the odor of alcohol emanating from his person. As argued by the state in oral arguments, the law does not require the officer to pinch his nose and close his eyes in any stop for violation of the instant statute to avoid the slightest "inspection" of a person.
In the instant case, according to the court of appeal, the defendant aroused Blanchard's suspicions that the defendant had been operating a motor vehicle while intoxicated only after the defendant exited his car. It is clear that in order to ensure the safety of the officer and vehicle occupants, an officer of the law may instruct a vehicle's occupants to exit the vehicle and proceed out of the field of traffic after conducting a traffic stop. See Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 333, 54 L.Ed.2d 331 (1977) (Recognizing the inordinate risk law enforcement officers encounter from occupants of vehicles); State v. Waters, 99-0407 (La.App. 1 Cir. 1999), 751 So.2d 290; State v. Edwards, 630 So.2d 302 (La.App. 5 Cir.1993); Cf. State v. Landry, 01-0784 (La.App. 4 Cir. 12/12/01), 804 So.2d 791. Blanchard validly ordered the defendant out of the defendant's car for safety reasons. There has been no finding that Blanchard was searching for contraband. Additionally, Blanchard, as a passive observer, did not conduct a close inspection of the defendant under Tate or Hernandez, nor did he inspect the defendant as occurred in Bond, Ciraolo or Riley. See also State v. Dorsey, 00-23319 (La.App. 4 Cir. 1/24/01), 779 So.2d 1008, 1013 (reversing grant of motion to suppress when police observed a matchbox in plain view after initially stopping defendant for violation of La.Rev. Stat. 32:295.1).
Furthermore, considering Blanchard's experience in law enforcement and track record for identifying and making DWI arrests, which is not contested, the facts herein present a valid reason for Blanchard to become suspicious and pursue an investigation of defendant's intoxicated state. Blanchard saw the defendant struggle for balance as he exited his vehicle, that he slurred his speech, and smelled of alcohol. At this point, Blanchard had no need to investigate the seat belt violation further; rather, he had independent, reasonable suspicion that the defendant was intoxicated and thus was authorized to conduct field sobriety tests, breather analyzer tests, and similar indices of intoxication upon the defendant. The violation of La.Rev.Stat. 32:295.1 was therefore not the "sole" reason for Blanchard's administration of field sobriety tests and his request that the defendant submit to a breath analyzer test. Accordingly, Blanchard's behavior did not conflict with the statute at issue. Cf. State v. Harmon, 32,659 (La.App. 2 Cir. 5/14/99), 754 So.2d 986 (reversing grant of motion to suppress when officer detected strong odor of alcohol after stopping defendant initially for violation of safety belt requirement).
It is well established that the task of statutory construction begins with an examination of the language of the statute itself. Touchard v. Williams, 617 So.2d 885 (La.1993). The legislature, through its employment of the words "inspect" and "search" in the statute, clearly and unequivocally expressed its intent to prohibit law enforcement officers from obtrusive examinations or physically searching a motorist's person or vehicle for simply failing *16 to wear a safety belt. However, it does not prohibit an officer from investigating signs of intoxication independent from the seat belt violation. After examining the text of the statute in its entirety and in light of the above analysis, we conclude that La.Rev.Stat. 32:295.1 clearly and unambiguously allows law enforcement officers to conduct field sobriety tests, and the like, upon determining signs of intoxication subsequent to stopping a motorist for violation of the Seat Belt Law.

CONCLUSION
The deputy in this case ordered the defendant to exit his vehicle for the safety reasons and acted only as a passive observer until he noticed obvious signs of intoxication. Thus, the deputy did not violate La.Rev.Stat. 32:295.1(F). Once the defendant displayed such telltale signs of intoxication, the deputy had justification for search and investigation independent of the defendant's violation of safety belt law. Accordingly, the police officer's conduct did not violate La.Rev.Stat. 32:295.1(F). We, therefore, reverse the appellate court's order and reinstate the district court's denial of the defendant's motion to suppress and remand this matter to the trial court for further proceedings consistent with this opinion.
NOTES
[1] Notably, while this motion was pending, Administrative Law Judge Elliot B. Vega of the Louisiana Department of Public Safety Office of Motor Vehicles issued an order recalling the proposed suspension of the defendant's driving privileges. In Judge Vega's Conclusions of Law, he stated the following:

I find that R.S. 32:295.1 simply does not allow an officer to further "search or inspect" a motorist stopped only for a seatbelt violation. I further find that the terms "search" and "inspect" clearly encompass the administration of field sobriety tests as well as the subsequent administration of a chemical test for intoxication.
[2] Neither the state's nor the defendant's application indicates the existence of a conviction.
[3] See State v. Barbier, 98-2923 (La.9/8/99), 743 So.2d 1236, 1240.