Judgment rendered September 21, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,479-CW
No. 54,515-CW
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

TONI LATHON                                      Plaintiff- 1st Applicant

versus

LESLIE LAKES RETIREMENT                          Defendants- 2nd
CENTER AND TDC SPECIALTY                         Applicants
UNDERWRITERS

* * * * *

On Application for Writs from the
Second Judicial District Court for the
Parish of Bienville, Louisiana
Trial Court No. 45674

Honorable Walter Edward May, Jr., Judge

* * * * *

RICKEY KENARD SWIFT                              Counsel for Plaintiff-
                                                 1st Applicant


GOLD, WEEMS, BRUSER,                             Counsel for Defendants-
SUES & RUNDELL                                   2nd Applicants,
By: Sarah Spruill Couvillon                      Leslie Lakes Care Center,
    Connor Charles Headrick                      L.L.C. d/b/a Leslie Lakes
    Brandon Ashley Sues                          Retirement Center and
                                                 TDC Specialty Insurance
                                                 Company

* * * * *

Before MOORE, STONE, and ROBINSON, JJ.

**STONE, J.**

This is a personal injury lawsuit wherein Toni Lathon (the "plaintiff") slipped and fell on the premises of the defendant, Leslie Lakes Retirement Center. Allegedly, the plaintiff fell because she stepped in liquid Kool-Aid spilled by the defendant's employee, Latoria Willis. The parties each filed a motion for summary judgment, both of which the trial court denied. For the reasons stated herein, we: (1) reverse the trial court's denial of the defendant's MSJ; and (2) affirm the trial court's denial of the plaintiff's MSJ.

FACTS AND PROCEDURAL HISTORY

In the trial court, the defendant filed an exception of no cause of action arguing that: (1) it is statutorily immune from liability, except for its acts of gross negligence; and (2) the plaintiff's allegations, if proven, would not constitute gross negligence. The trial court denied the exception and this court denied the defendant's writ application challenging that ruling. The parties later filed cross motions for summary judgment,[1] and the trial court denied both of them. This court issued a supervisory writ ordering the trial court to issue a per curiam opinion regarding whether La. R.S. 29:771(B)(2), the healthcare provider immunity provision in the Louisiana Health Emergency Powers Act, applies to the plaintiff's claim.[2] The trial court ruled that the statute is applicable, but denied the defendant's MSJ nonetheless. The trial court also denied the plaintiff's MSJ.

---

[1] Motion for summary judgment is hereinafter abbreviated as "MSJ."
[2] Notably, the plaintiff incorrectly states that the trial court granted an exception of res judicata declaring consideration of the issues raised by the defendant's MSJ to be barred; in reality, the trial court denied the MSJ due to the supposed existence of a genuine issue of material fact. Likewise, there is there no legal basis for applying res judicata as a bar to the defendant's MSJ.

The parties both filed writ applications challenging the denial of their respective MSJs. We granted the writs to docket.

**Motions for summary judgment**

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A fact is 'material' when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791. A genuine issue is one regarding which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. *Hines v. Garrett*, 04-0806 (La. 6/25/04), 876 So. 2d 764.

La. C.C.P. art. 966(D)(1) allocates the burden of proof on a motion for summary judgment as follows:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and

2

admissions. La. C.C.P. art. 966(A)(4). Furthermore, the court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. La. C.C.P. art. 966(D)(2).

**Statutory immunity**

At all times relevant to these proceedings, La. R.S. 29:771(B)(2)(c) stated:

> During a state of public health emergency, any health care providers shall not be civilly liable for causing the death of, or injury to, any person *or damage to any property* except in the event of gross negligence or willful misconduct. (Emphasis added).

By its terms, this provision applies: (1) in favor of "any healthcare provider"; (2) regarding any personal injury or property damage claim; which (3) arises during a public health emergency.

"As with the interpretation of any statute, the only question is the expressed intent of the legislature." *Leisure Recreation & Ent., Inc. v. First Guar. Bank*, 21-00838 (La. 3/25/22), 339 So.3d 508. (emphasis added). "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. C.C. art. 9. There is an even stronger admonition against judicial rewriting of legislation in the revised statutes: "[w]hen the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." La. R.S. 1:4.

Furthermore, "the object of the court in construing a statute is to ascertain the legislative intent and, where a literal interpretation would produce absurd consequences, the letter must give way to the spirit of the

3

law and the statute construed so as to produce a reasonable result." *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 00-1695 (La. 6/29/01), 808 So. 2d 294, 302. The Supreme Court has in effect defined "absurd consequences" as consequences demonstrably incompatible with the legislature's expressed intent:

> [T]he plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters in which case the intention of the drafters, rather than the strict language controls. (Emphasis added; internal bracketing and quotation marks omitted).

*State v. Benoit*, 01-2712 (La. 5/14/02), 817 So. 2d 11.

**Gross negligence**

Gross negligence has a well-defined meaning in Louisiana law:

> Louisiana courts have frequently addressed the concept of gross negligence. Gross negligence has been defined as the want of even slight care and diligence and the want of that diligence which even careless men are accustomed to exercise. Gross negligence has also been termed the entire absence of care and the utter disregard of the dictates of prudence, amounting to complete neglect of the rights of others. Additionally, gross negligence has been described as an extreme departure from ordinary care or the want of even scant care. *There is often no clear distinction between…willful, wanton, or reckless…conduct and gross negligence, and the two have tended to merge and take on the same meaning.* Gross negligence, therefore, has a well-defined legal meaning distinctly separate, and different, from ordinary negligence.[3]

*Ambrose v. New Orleans Police Dep't Ambulance Serv.*, 93-3099 (La. 7/5/94), 639 So. 2d 216. Additionally, the language emphasized in the above quote from *Ambrose* makes clear that the concept of gross negligence subsumes willful, wanton, and reckless misconduct.

---

[3] Emphasis added; internal citations, quotation marks, and bracketing omitted.

4

**Analysis**

It is undisputed that a public health emergency was in effect at the time of the plaintiff's fall, that the defendant is a healthcare provider, and that the plaintiff's cause of action sounds in personal injury. Thus, it is undisputed that, if the language of the statute is given literal effect, immunity applies in favor of the defendant. However, the plaintiff argues that, despite the statute's language, its immunity should not extend to her claim because it is not a medical malpractice claim, but instead, a premises liability claim. In support, the plaintiff cites sources from other states and from the federal Department of Health and Human Services. We reject the plaintiff's argument. The language of the statute is clear and unambiguous and its application to the plaintiff's claim does not lead to consequences demonstrably incompatible with the expressed intent of the statute. *State v. Benoit, supra.* The statute's express extension of immunity to property damage claims demonstrates that the legislative purpose of the statute reaches far beyond medical malpractice. The purpose of the statute is thus to alleviate the liability burden on healthcare providers during public health emergencies, such as the COVID 19 pandemic, which dangerously overburdened the healthcare system. Moreover, literal application of the statute in this case is easily compatible with that legislative intent because the undisputed facts establish a causal connection between the defendant's COVID protocols and the plaintiff's claim. When Willis spilled the Kool-Aid, she was engaged in delivering food to patients' rooms because patients were confined therein for COVID safety reasons. That causal connection to COVID protocols places the plaintiff's claim easily within the purpose of the statute, and makes it reasonable to apply the immunity statute in this case.

5

The trial court was correct in holding that the statute is applicable, even though the consequences in this case may be harsh and unfair.

Furthermore, the plaintiff has failed to carry her burden (under La. C.C.P. art. 966(D)(1)) of introducing prima facie evidence of each and every element of gross negligence. Only the security camera videos are in evidence, and no reasonable factfinder could conclude that they (the videos) constitute prima facie proof of gross negligence. Accordingly, there is no genuine issue of material fact.

However, the plaintiff in effect argues that, nonetheless, the defendant is not entitled to judgment as a matter of law. In particular, the plaintiff filed an "exception of res judicata" against the defendant's MSJ. The plaintiff argues that the trial court's previous denial of the defendant's exception of no cause of action precludes the defendant from filing an MSJ seeking the same outcome.

The plaintiff's argument manifests utter confusion of the doctrine of res judicata (which applies to *final* judgments)[4] and the law of the case doctrine (which applies to *interlocutory* judgments rendered by a court of appeal).[5] Res judicata does not apply to non-appealable interlocutory judgments such as the denial of an exception of no cause of action. *Hall v. James*, 43,263 (La. App. 2 Cir. 6/4/08), 986 So. 2d 817; *Lacas v. Monroe Credit, LLC*, 54,170 (La. App. 2 Cir. 12/15/21). The plaintiff's exception of res judicata is therefore meritless.

Furthermore, the law of the case doctrine is inapplicable. "[T]he [law of the case] doctrine does not apply in the context of a *trial court* ruling on

---

[4] La. R.S. 13:4231.
[5] *Babineaux, infra; Land, infra.*

6

interlocutory issues." *Land v. Vidrine*, 10-1342 (La. 3/15/11), 62 So. 3d 36, 42. (emphasis added). Nor does it attach on the basis of denial of writs. As the Louisiana Supreme Court, in *Babineaux v. Pernie-Bailey Drilling Co.*, 261 La. 1080, 262 So. 2d 328, 332 (1972), explained:

> The law of the case rule cannot supplant the Code of Civil Procedure…[and]…only applies when the same issue is presented *to the same court that has previously <u>decided</u> that issue* in the same case which has not become res judicata (Emphasis in original; internal citations and quotation marks omitted).

The denial of writs is a decision to *not* decide the issues raised in the writ application. *Levine v. First Nat. Bank of Com.*, 06-0394 (La. 12/15/06), 948 So. 2d 1051.

Therefore, neither the trial court's denial of the exception of no cause of action nor our denial of writs on that decision can serve as the basis for application of the law of the case doctrine. *Id.*; *Babineaux*, *supra*; *Land*, *supra*.

## CONCLUSION

The defendant's MSJ is **GRANTED**, and the plaintiff's MSJ is **DENIED**. The plaintiff's suit against the defendant is dismissed with prejudice. All costs of this appeal/writ application are taxed to the plaintiff, Toni Lathon.